UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES MICHAEL DAYSON,

     Plaintiff,     Case No. 1:12-cv-1310

v.              Honorable Robert J. Jonker

SUSAN RONDEAU et al.,

     Defendants.
_____/

**OPINION**

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff James Michael Dayson presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Kinross Correctional Facility, though some of the actions about which he complains occurred while he was housed at the now-closed Florence Crane Correctional Facility (ACF). He sues Parole Agent Susan Rondeau; former MDOC Director Patricia Caruso; former ACF Warden Carol Howes; the Southwest Drug Enforcement Team/Task Force of the Cass County Sheriff's Department; and former Assistant Cass County Prosecutor Jason Ronning.

Plaintiff's complaint includes no dates for the conduct that forms the basis for his complaint. In the first count of his complaint, Plaintiff alleges that his parole conditions violated his rights under the Eighth Amendment. He asserts that he was paroled under the supervision of Defendant Rondeau. Defendant Rondeau, ostensibly acting in violation of MDOC policy, permitted Plaintiff to leave the state to go to Warsaw, Indiana, so that he could look for a house to purchase. Rondeau, however, failed to initiate paperwork to shift Plaintiff's parole to Indiana. Plaintiff thereafter was returned to prison on a technical parole violation.

Plaintiff was released again, and Rondeau again refused to initiate an interstate transfer so that Plaintiff could reside in his house in Warsaw, Indiana. At some point, Rondeau told Plaintiff that she would not authorize the transfer because the home was not inhabitable because of a mold infestation. Rondeau refused to permit Plaintiff to go to Warsaw to repair his home. Plaintiff eventually lost the home to a tax foreclosure sale. Plaintiff was thereafter returned to prison for threatening behavior toward Rondeau.

In Count 2 of his complaint, Plaintiff alleges that Rondeau violated his right to equal protection by referring him for parole revocation on a technical rule violation, after Plaintiff submitted a urine sample that was positive for THC. Plaintiff contends that, while in jail, he met a white man under Defendant Rondeau's supervision who was referred to a Technical Rule Violator program, rather than to prison, despite having committed two new criminal offenses. Plaintiff contends that, because the white man had more serious violations than Plaintiff but was not referred to prison, Rondeau must have discriminated against Plaintiff based on his race.

Plaintiff's third count alleges that Defendant Caruso approved MICH. DEP'T OF CORR., Policy Directive 05.03.115, which restricts a prisoner's access to the law library to six hours per week, unless the prisoner demonstrates the existence of a deadline. He also contends that Defendant Caruso permitted the operation of a housing unit that contained asbestos ceiling tiles, improperly exposing inmates in the unit to asbestos dust. Plaintiff contends that, because he was asking inmates and staff for witness statements in support of his claim regarding the asbestos, Defendant Howes transferred Plaintiff to Camp Branch, which did not have a law library. Despite his protests, an unidentified party or parties kept Plaintiff at Camp Branch. During the time he was kept at Camp Branch, Plaintiff submitted a motion for relief from judgment under MICH. CT. R. 6.502, a legal-malpractice action, and a thirteen-count complaint against Defendant Caruso. Plaintiff alleges that all of the actions were inadequately prepared because of the lack of library access, and they ultimately were decided against Plaintiff. On these facts, Plaintiff alleges that Defendant Caruso conspired with other, unidentified persons to deny Plaintiff access to the courts.

In his fourth count, Plaintiff alleges that, eight months after his release on parole, Defendant Rondeau brought Defendant Southwest Drug Enforcement Team to his parents' home,

where they conducted an intensive search of the house, garage and vehicles, ostensibly without suspicion of any criminal activity. Plaintiff was arrested for possession of marijuana and cocaine. After Plaintiff retained an attorney, the charges were dismissed. Sometime thereafter, Defendant Ronning reinstated the charges for four offenses: (1) possession of cocaine; (2) use of cocaine; (3) possession of marijuana; and (4) maintaining a drug house. Plaintiff complains that the reinstated charges were based on no additional evidence. Plaintiff again retained an attorney and ultimately agreed to plead guilty to possession of marijuana and attempting to maintain a drug house, in exchange for dismissal of the remaining charges. Plaintiff alleges that the search and charges resulted from a conspiracy to retaliate against him for unspecified conduct, eventually chilling his First Amendment right to petition government.

Count 5 of the complaint alleges that Plaintiff is an American Indian jewelry designer, who invited customers to his home. One of the customers allegedly dropped a piece of plastic on the floor, which Plaintiff threw in the garbage can. The plastic was recovered during the search by the drug enforcement team, and it tested positive for cocaine. That result led to Plaintiff's arrest, imprisonment, and parole violation charges. Plaintiff complains that the Defendant drug enforcement team failed to include in their report the obvious fact that Plaintiff was running a business out of the house. The team found no other evidence that would support the drug charges. Nevertheless, Defendant Ronning maintained the felony charges, in order to ensure that Plaintiff returned to prison with an increased maximum sentence. Plaintiff asserts that Defendants Ronning and the drug enforcement team conspired to maliciously prosecute him.

In his request for relief, Plaintiff seeks equitable tolling of the statute of limitations, together with a declaratory judgment and compensatory and punitive damages.

**Discussion**

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A.     Eighth Amendment**

In his first claim, Plaintiff complains that Defendant Rondeau violated the Eighth Amendment by imposing restrictive parole conditions, which prevented him from moving to Indiana. He bases his assertions on his contention that Rondeau's conduct violated MDOC policy.

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, Plaintiff's allegations that Rondeau violated MDOC policy do not state a § 1983 claim.

Moreover, Defendant's enforcement of parole conditions in a manner more restrictive than Plaintiff believes appropriate fails to state a claim under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore,

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A.     Eighth Amendment**

In his first claim, Plaintiff complains that Defendant Rondeau violated the Eighth Amendment by imposing restrictive parole conditions, which prevented him from moving to Indiana. He bases his assertions on his contention that Rondeau's conduct violated MDOC policy.

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, Plaintiff's allegations that Rondeau violated MDOC policy do not state a § 1983 claim.

Moreover, Defendant's enforcement of parole conditions in a manner more restrictive than Plaintiff believes appropriate fails to state a claim under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore,

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A.     Eighth Amendment**

In his first claim, Plaintiff complains that Defendant Rondeau violated the Eighth Amendment by imposing restrictive parole conditions, which prevented him from moving to Indiana. He bases his assertions on his contention that Rondeau's conduct violated MDOC policy.

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, Plaintiff's allegations that Rondeau violated MDOC policy do not state a § 1983 claim.

Moreover, Defendant's enforcement of parole conditions in a manner more restrictive than Plaintiff believes appropriate fails to state a claim under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore,

prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

"The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972). Ordinarily, since the mere fact of incarceration does not violate the Eighth Amendment, a condition of parole less restrictive than incarceration necessarily does not violate that Amendment. *See Sipes v. Sampson*, No. 2:08-cv-213, 2009 WL 2488085, at *5 (W.D. Mich. Aug. 13, 2009) (requirement that parolee wear a GPS bracelet was far less restrictive than incarceration and therefore fell short of an Eighth Amendment violation); *see also Turner v. Smith*, No. C11-05176 CRB, 2012 WL 6019103, at *6 (N.D. Cal. Dec. 3, 2012) (same). Here, Plaintiff simply complains that he wanted to be allowed to move to a different state while on parole. Such an allegation falls far short of constituting an intolerable condition that would violate the Eighth Amendment.

### B.     Equal Protection

Plaintiff alleges that his right to equal protection was violated when Defendant Rondeau recommended that Plaintiff be returned to prison for a technical rule violation, but recommended a placement of a white parolee in a program for technical rule violators.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)). To establish a violation of the Equal Protection Clause, an inmate must show that the defendant purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the action of the defendant. *Id.* at 265-66.

Plaintiff's allegations of discriminatory treatment are conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 439 (6th Cir. 2012) (discussing the distinction between

direct and indirect methods of proving discrimination). First, Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 439. Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he fails to allege that the white parolee was similarly situated in all relevant respects. *See Davis*, 679 F.3d at 442; *Umani*, 432 F. App'x at 458. Although Plaintiff claims that a white parolee committed more serious parole violations than his own, he does not allege any other similarities between himself and the white parole – in their offenses of conviction, their histories of compliance with parole conditions, or their prior parole successes or failures. Plaintiff therefore fails to state an equal protection claim.

### C. Conspiracy to Deny Access to the Courts

In his third count, Plaintiff alleges that Defendant Caruso approved a policy limiting law library access to six hours per week, in the absence of a deadline. He also alleges that Caruso allowed prisoners to be housed in a prison housing unit that contained asbestos ceiling tiles and permitted unknown maintenance officials to fix the roof without properly protecting prisoners from asbestos contamination. Plaintiff alleges that, while he was asking inmates and staff to be witnesses for that negligent action, Defendant Howes or her designee had Plaintiff transferred to Camp Branch, a facility that did not have a law library. While he was housed at Camp Branch, Plaintiff allegedly pursued three legal matters: (1) a motion for relief from judgment under MICH. CT. R. 6.502; (2) a legal malpractice action; and (3) a 13-count complaint against Defendant Rondeau. Based on these allegations, Plaintiff contends that Caruso and Howes conspired to deny him access to the courts.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).

Plaintiff's allegations of conspiracy between Defendants Caruso and Howes are wholly conclusory and speculative. He makes no allegations establishing a link between the alleged conspirators or any agreement between them. He merely suggests that a conspiracy must have existed because he was transferred to Camp Branch, which had no law library, during a time he wished to file various legal proceedings against persons other than the conspirators. Such allegations do not even hint at a "possibility" of conspiracy, much less allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. As the Supreme Court has recognized, although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more

likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. Plaintiff therefore fails to state a plausible claim of conspiracy.

In addition, Plaintiff fails to state an access-to-the-courts claim against Caruso and Howes. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992). An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates

> need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Plaintiff fails to allege any conduct by either Caruso or Howes that would demonstrate an interference with Plaintiff's right of access to the courts. Indeed, he alleges no active unconstitutional conduct by either Defendant. Caruso's approval of a policy limiting access to the law library to six hours per week did not, in and of itself, deny Plaintiff access to the courts. Similarly, the mere fact that Caruso may have approved the existence of Camp Branch, which did not have a law library, did not of itself impair Plaintiff's right of access to the courts. Instead, to support his claim, Plaintiff must rely on an inference that unidentified subordinates to Caruso may have made decisions under the policies that prevented Plaintiff from accessing the law library.

Similarly, Plaintiff's only allegation against Defendant Howes is that she transferred him from ACF to Camp Branch, conduct that is not unconstitutional. The fact that Plaintiff thereafter sought access to the courts but was denied access to a law library does not demonstrate that Howes is liable for the deprivation. Plaintiff merely implies that Howes is responsible for the result because of her supervisory authority over the facility.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that either Caruso or Howes engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.[1]

---

[1] Although the Court need not decide the issue, it appears that Plaintiff's claim is time-barred. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Camp Branch opened in 1994 and closed on February 21, 2009. *See* MDOC FYI Newsletter, Vol. 21, No. 5 (March 5, 2009), http://www.michigan.

### D. Conspiracy and Retaliation

In the fourth count of his complaint, Plaintiff alleges that Defendant Rondeau conspired with Defendant Southwest Drug Enforcement Team of Cass County to conduct an illegal and intensive search of Plaintiff's house, without suspicion of any criminal activity. He also appears to allege that Defendant Ronning implicitly conspired with the other Defendants to reinstate criminal charges against him based solely on the illegal search. As a consequence, Plaintiff was forced to retain an attorney, at significant expense. Plaintiff ultimately pleaded guilty to offenses related to the search. Plaintiff alleges that Defendants conspired and retaliated against him.

Although Plaintiff does not invoke the Fourth Amendment, the alleged conspiracy to search his parents' home and obtain evidence leading to his arrest potentially implicates the Fourth Amendment. To the extent Plaintiff seeks declaratory and monetary relief for the alleged conspiracy to violate his Fourth Amendment rights, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has

---

gov/documents/corrections/MAP_ CFA-REGIONS_SEPT_30_2009_300214_7.pdf (last viewed Apr. 4, 2013). As a consequence, the last possible time Plaintiff's incarceration at Camp Branch could have interfered with the filing of his lawsuits would have been February 21, 2009, more than three years prior to the filing of the instant action on November 13, 2012.

been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

The reasonableness of the search and the evidence resulting from the search were integral to Plaintiff's criminal conviction. "Fourth Amendment claims arising out of searches occurring prior to Plaintiff's guilty plea [are] precluded by *Heck v. Humphrey*, [512 U.S. at 487], on the grounds that a civil suit holding that these searches were improper would undermine the basis of Petitioner's guilty plea and sentence." *Jacob v. Twp. of West Bloomfield*, 531 F.3d 385, 388 (6th Cir. 2008); *see also Shamaeizadeh v. Cunigan*, 182 F.3d 391, 398-99 (6th Cir. 1999) (holding that, where an allegedly illegal search produced evidence used to obtain a conviction, the convicted cannot bring a § 1983 claim challenging the search until the conviction is overturned), *overruled in other part, Wallace v. Kato*, 549 U.S. 384, 393 (2007) (recognizing that *Heck* bars the pursuit of a Fourth Amendment arrest claim until the conviction is overturned, but concluding that the action accrues at the time of the arrest). Therefore, Plaintiff's action is barred under *Heck* unless and until his criminal conviction has been invalidated.[2]

---

[2]Even assuming that Plaintiff's Fourth Amendment claim was not barred by *Heck*, the Southwest Drug Enforcement Team is not a proper party defendant. The drug enforcement team is alleged to be a task force of the Cass County Sheriff's Department, which does not exist as a separate legal entity. The drug enforcement team, like the Cass County Sheriff's Department, is simply an agent of the county. *See Vine v. Cnty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. Cnty. of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) and *Bayer v. Almstadt*, 185 N.W.2d 40, 44 (Mich. Ct. App. 1970)). However, construing Plaintiff's *pro se* complaint with all required liberality,

Moreover, Defendant Ronning is entitled to absolute immunity for his actions in prosecuting the criminal action against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). Obviously, deciding whether to prosecute Plaintiff for a drug offense is part of the prosecutor's role as an advocate. Accordingly, Defendant Ronning is entitled to immunity.

---

*Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Cass County. Cass County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Id.* Plaintiff fails even to allege the existence of a policy or custom that caused the injury.

Finally, although Plaintiff's fourth count purports to allege a retaliation claim, Plaintiff's allegations fall far short of describing such a claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claim fails at the first step. He makes no allegation that he was engaged in constitutionally protected conduct at any time leading up to the allegedly improper search. His retaliation claim therefore will be dismissed.

### E. Conspiracy and Malicious Prosecution

In his fifth and final cause of action, Plaintiff alleges that, during its search, the Southwest Drug Enforcement Team found no evidence supporting a drug charge except one piece of plastic that tested positive for cocaine. He contends that the team disregarded Plaintiff's evidence about how the piece of plastic may have come to be present on the property. He also alleges that the drug enforcement team improperly conspired with Defendant Ronning to have inflated, cocaine-

related charges brought against Plaintiff. He alleges that the conspiracy was designed to ensure that Plaintiff was returned to prison on a parole violation with an increased maximum sentence.[3]

As previously discussed, Defendant Ronning is entitled to prosecutorial immunity for his decision to prosecute Plaintiff. *See Imbler*, 424 U.S. at 431. As also previously discussed, a claim of conspiracy requires Plaintiff to allege facts showing the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 681. Plaintiff's allegations are wholly conclusory. He alleges no facts that would show the existence of such a conspiracy, much less that the Defendants shared the objective of the conspiracy.

Further, to state a claim for malicious prosecution, a plaintiff must allege facts showing that there was a lack of probable cause for the criminal prosecution. *See Sykes v. Anderson*, 625 F.3d 294, 310-11 (6th Cir. 2010); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir 2007). Plaintiff makes no such claim. Indeed, by his own admission, during their search of Plaintiff's bedroom, the drug enforcement team found a piece of plastic that tested positive for cocaine. Regardless of Plaintiff's alternative explanations for the presence of the plastic in his room, that evidence constituted sufficient probable cause to support a prosecution for possession of cocaine. As a consequence, Plaintiff fails to state a malicious-prosecution claim.

---

[3]As discussed with respect to Plaintiff's equal protection claim, Plaintiff's malicious prosecution claim also appears to be time-barred. Plaintiff presently is incarcerated on six convictions for home-invasion, breaking-and-entering, and unlawful driving away of an automobile, based on offense conduct that occurred on April 13, 2008. He was sentenced on those convictions on April 17, 2009, and his earliest release date is April 11, 2022. It does not appear that Plaintiff was or could have been eligible for parole on his current convictions. As a consequence, the conduct about which he complains necessarily occurred not later than April 17, 2009, more than three years before this action was filed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     April 29, 2013              /s/ Robert J. Jonker
                                                                                        ROBERT J. JONKER
                                                                                        UNITED STATES DISTRICT JUDGE